1

2

3

4

5

6                   IN THE UNITED STATES DISTRICT COURT

7               FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9    SHIRLEY ANN SILVA,                          CASE NO.  1:05-cv-00391 TAG

10             Plaintiff,                         MEMORANDUM DECISION AND ORDER
                                                  ON PLAINTIFF'S APPEAL FROM
11         vs.                                    ADMINISTRATIVE DECISION

12   JO ANNE B. BARNHART,                         ORDER DIRECTING THE CLERK TO
     Commissioner of Social Security,             ENTER JUDGMENT IN FAVOR OF
13                                                DEFENDANT AND AGAINST PLAINTIFF
             Defendant.
14
                                            /
15

16         Plaintiff Shirley Ann Silva ("claimant" or "plaintiff") seeks  judicial review of an

17   administrative decision denying her claim for Supplemental Security Income ("SSI") benefits under

18   the Social Security Act ("the Act").  Pending before the Court is claimant's appeal from the

19   administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed

20   her complaint on March 22, 2005 (Doc. 1), and her opening brief on October 10, 2005.  (Doc. 15).

21   The Commissioner filed her opposition on January 5, 2006 (Doc. 18). Claimant's reply brief was

22   filed on January 19, 2006.  (Doc. 19).

23         Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed

24   before a United States Magistrate Judge.  (Docs. 4 and 10).  By an order dated August 4, 2005, this

25   action was assigned to the United States Magistrate Judge for all further proceedings.  (Doc. 13).

26                                  **JURISDICTION**

27         On January 22, 2003, claimant filed an application for Supplemental Security Income

28

                                              1

1 ("SSI") benefits with a protective filing date of January 14, 2003.[1] (Administrative Record ("AR")

2 86). Claimant's application was denied initially and on reconsideration and, on September 22, 2004,

3 Administrative Law Judge ("ALJ") Michael J. Haubner found that claimant was not disabled. (AR

4 13-22). The Appeals Council denied claimant's request for review on January 25, 2005 (AR 5-8),

5 leaving the ALJ's decision of September 22, 2004, as the final decision of the Commissioner. On

6 March 22, 2005, within sixty days of the Appeals Council decision, claimant timely appealed to the

7 district court pursuant to 42 U.S.C. § 405(g). (Doc. 1).

8                                    **STATEMENT OF FACTS**

9          The facts have been presented in the administrative hearing transcript, the ALJ's decision, the

10 briefs of both claimant and the Commissioner and will only be summarized here.

11         Claimant was 43 years old at the time of the administrative hearing before ALJ Haubner.

12 (AR 36). In her Disability Report, claimant stated that her highest grade of school completed was a

13 GED. (AR 98). The same report evidences that claimant worked during from June 2000 until

14 December 2001 as a newspaper inserter. (AR 93). Her only work prior to that was in 1980.

15 (AR 37). Also in her Disability Report, claimant clarified that her impairment - shortness of breath -

16 first bothered her in 1984 and that she became unable to work due to it on December 10, 2001.

17 (AR 92).

18         As to her medical condition, claimant testified that she has reactive airway disease and a

19 history of asthmatic bronchitis. (AR 42). Claimant further stated that she takes all of her

20 medications when and in the amounts prescribed. (AR 42). These medications include Theophyllin

21 and inhalers, one of which claimant uses twice a day, and another which she uses four times a day.

22 (AR 44). Claimant also stated that she uses a home nebulizer four times a day and takes oxygen

23 once a day at bedtime. (AR 44-45). Recently, according to claimant, she had started taking

24 prednisone. (AR 46). As a side effect from the medications, claimant stated that she gets the

25 "shakes." (AR 46). Claimant also testified that her last asthma attack requiring an emergency room

26

27        [1]  To qualify as an effective claim, an application for benefits must be submitted on a prescribed form.
   20 C.F.R. § 404.610. However, a written statement indicating a person's intent to claim benefits can, if certain
28 coincident and subsequent requirements are met, establish a protective filing date. 20 C.F.R. § 404.630.

1    visit had occurred three weeks prior to the hearing.  (AR 47).  According to claimant, the only prior

2    asthma attack requiring a visit to an emergency room was in 1996, though she gets little asthma

3    attacks (wheezing, coughing and difficulty exhaling) about two or three times monthly, each of about

4    five to ten minutes in duration.  (AR 47-50).  Notwithstanding her breathing difficulties and

5    medications, claimant stated that she smokes daily (three cigarettes a day at the time of the hearing,

6    10 a day several weeks prior to the hearing), though her doctors had continuously told her to quit

7    since as long ago as 1986.  (AR 43).

8        As to her daily life and activities, claimant testified that she lives alone in a house

9    (AR 37-38), drives a stick shift automobile four or five times a week, and performs a range of

10    household activities without assistance.  (AR 38).  These include bathing and showering, preparing

11    her own meals each day, washing dishes twice daily, washing laundry every two weeks, weekly floor

12    sweeping, weekly vacuuming, daily bed straightening, shopping weekly and attendance at church

13    services (sitting but not standing) each week.  (AR 38-42).  Claimant testified that she watches three

14    hours of television each day, reads about four hours each day and goes for walks three times a week.

15    (AR 42).  As to her exertional limitations, claimant stated that she can lift and carry only ten (10)

16    pounds, can stand for only 20 to 25 minutes and can walk for only half a block.  (AR 42-43, 46-47).

17    Claimant also stated that she has to lay down for thirty minutes three times a day because of

18    difficulty breathing.  (AR 45).

19                  **SEQUENTIAL EVALUATION PROCESS**

20        The Social Security Act defines "disability" as the "inability to engage in any substantial

21    gainful activity by reason of any medically determinable physical or mental impairment which can be

22    expected to result in death or which has lasted or can be expected to last for a continuous period of

23    not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides

24    that a claimant shall be determined to be under a disability only if her impairments are of such

25    severity that claimant is not only unable to do her previous work but cannot, considering claimant's

26    age, education and work experiences, engage in any other substantial gainful work which exists in

27    the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

28    ///

1    The Commissioner has established a five-step sequential evaluation process for determining

2  whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if she is

3  engaged in substantial gainful activities.  If she is, benefits are denied.  20 C.F.R. §§ 404.1520(b),

4  416.920(b).  If she is not, the analysis proceeds to step two, which considers whether claimant has a

5  medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

6    If claimant does not have a severe impairment or combination of impairments, the disability

7  claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which

8  compares claimant's impairment with a number of listed impairments acknowledged by the

9  Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),

10  416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed

11  impairments, claimant is conclusively presumed to be disabled.  If the impairment is not one

12  conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines

13  whether the impairment prevents claimant from performing work she has performed in the past.  If

14  claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520(e),

15  416.920(e).  If claimant cannot perform this work, the fifth and final step in the process determines

16  whether she is able to perform other work in the national economy in view of her age, education and

17  work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  See Bowen v. Yuckert, 482 U.S. 137

18  (1987).

19    The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement

20  to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  In terms of the five

21  step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the

22  claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to

23  assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ

24  shares the burden at each step."  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics

25  in original).  The initial burden is met once a claimant establishes that a physical or mental

26  impairment prevents her from engaging in her previous occupation.  The burden then shifts to the

27  Commissioner to show (1) that the claimant can perform other substantial gainful activity and

28  (2) that a "significant number of jobs exist in the national economy" which claimant can perform.

1  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

2  **STANDARD OF REVIEW**

3         Congress has provided a limited scope of judicial review of a Commissioner's decision. See,

4  42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when

5  the determination is not based on legal error and is supported by substantial evidence. See, Jones v.

6  Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812

7  F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

8  contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is

9  not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v.

10  Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more

11  than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less

12  than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v.

13  Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence

14  "means such evidence as a reasonable mind might accept as adequate to support a conclusion."

15  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and

16  conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.

17  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as

18  a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan,

19  877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

20         It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson,

21  402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold

22  the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is

23  substantial evidence to support the administrative findings, or if there is conflicting evidence that

24  will support a finding of either disability or nondisability, the finding of the Commissioner is

25  conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision

26  supported by substantial evidence will still be set aside if the proper legal standards were not applied

27  in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human

28  Services, 839 F.2d 432, 433 (9th Cir. 1987).

1          **ALJ'S FINDINGS**

2          **Step One**

3          The ALJ found at step one that claimant "has not engaged in substantial gainful activity since

4   the alleged onset of disability."  (AR 21).

5          **Step Two**

6           At step two, the ALJ found that claimant suffered from reactive airways disease and a

7   history of asthmatic bronchitis, which he considered "severe."  (AR 21).

8          **Step Three**

9          At step three, the ALJ assessed whether claimant's impairments, while severe, were among

10  those acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.

11  See 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of

12  Impairments).  The ALJ  concluded that claimant's impairments did not meet or equal any of the

13  listed impairments.  (AR 21).

14         **Step Four**

15         Based upon the first of four different hypotheticals posed by ALJ Haubner to a vocational

16  expert ("VE") at claimant's administrative hearing - a hypothetical deemed by the ALJ to be "most

17  consistent with the medical evidence of record" - the ALJ concluded that claimant could, as the VE

18  testified, perform her past relevant work as a newspaper inserter.  (AR 21).  A finding of "not

19  disabled" was therefore made by the ALJ at Step Four.  (See AR 21).

20         **Step Five**

21         As an alternative to a finding of not-disabled at Step Four, the ALJ considered claimant's

22  Step Five status under "the Grids," 20 C.F.R. Pt. 404, Subpt. P, App. 2.  Based upon his finding that

23  claimant was a "'younger individual between the ages of 18 and 44'" (AR 22, *quoting* 20 C.F.R.

24  § 416.963), that she had obtained a GED (AR 22, *quoting* 20 C.F.R. § 416.968), and that she could

25  "work at all exertional levels," the ALJ determined that section 204.00 of the Grids directed a

26  conclusion of "not disabled."  (AR 22).  Even apart from the Grids, the ALJ determined that,

27  considering the types of work that claimant was functionally capable of performing, in combination

28  with her age, education and work experience, she "could be expected to make a vocational

1   adjustment to work that exists in significant numbers in the national economy." (AR 22). Relying

2   on testimony of a vocational expert, the ALJ stated that "[e]xamples of such jobs include the world

3   of unskilled work, less 10 percent." (AR 22).

4                                   **ISSUES**

5        Claimant's Opening Brief raised the following issue for consideration:

6        1. Whether the ALJ erred in discounting the opinion of claimant's treating physician Rakesh

7   Jindal, M.D.

8        2. Whether the case should be remanded for consideration of a letter from Dr. Jindal to ALJ

9   Haubner.

10        3. Whether the ALJ erred in rejecting vocational expert testimony based upon claimant's

11   credited testimony.

12        This Court must uphold the Commissioner's determination that claimant is not disabled if the

13   Commissioner applied the proper legal standards and there is substantial evidence in the record as a

14   whole to support the decision.

15                            **DISCUSSION**

16   **1.**      **ALJ's Decision to Discount Opinion of Treating Physician Rakesh Jindal, M.D.**

17        Claimant asserts that ALJ Haubner improperly discounted the medical opinions of her

18   treating physician, Rakesh Jindal, M.D. (Doc. 15, pp. 6-8). Dr. Jindal had opined that claimant was

19   "totally sedentary" and "unable to be gainfully employed" given her "<u>severe</u> bronchitic type COPD"

20   or her "moderately severe emphysema with frequent flare ups of . . . asthmatic bronchitis" and that

21   claimant "gets dyspnoic[2] with [the] least amount of exertion." (AR 141, 149) (emphasis in original).

22        The courts distinguish among the opinions of three types of physicians: treating physicians,

23   physicians who examine but do not treat the claimant ("examining physicians") and those who

24   neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821,

25   839 (9th Cir. 1996). A treating physician's opinion is given special weight because of his or her

26   familiarity with a claimant's physical condition. Fair v. Bowen, 885 F.2d 597, 604-605 (9th Cir.

27

28           [2] Dyspnea is the sensation of difficulty in breathing. The Merck Manual 514 (17th ed. 1999).

1   1989).  In order to reject a treating physician's ultimate conclusions, the ALJ must supply "clear and

2   convincing" reasons.  Fair, 885 F.2d at 604-605.  However, when contradicted by another doctor, the

3   ALJ may reject a treating physician's opinion upon giving "'specific and legitimate reasons'

4   supported by substantial evidence in the record for so doing."  Id. (quoting Murray v. Heckler, 722

5   F.2d 499, 502 (9th Cir. 1983)).  The same test applies to examining physicians: The ALJ must give

6   clear and convincing reasons for rejecting uncontradicted opinions, or "specific and legitimate

7   reasons supported by substantial evidence in the record" for rejecting those opinions that have been

8   contradicted.  Lester, 81 F.3d at 830-31.  Finally, as to the nature of the reasons deemed sufficient (to

9   set aside a treating or examining physician's opinion), courts within the Ninth Circuit have

10  recognized conflicting medical evidence, the absence of regular medical treatment during the alleged

11  period of disability, and the lack of medical support for doctors' reports that are based substantially

12  on the claimant's subjective complaints of pain as specific legitimate reasons for disregarding a

13  treating or examining physician's opinion.  Flaten v. Secretary of Health & Human Svcs., 44 F.3d at

14  1453, 1463-64; Fair, 885 F.2d at 604.

15          Here, in rejecting Dr. Tindal's opinions as set forth above, ALJ Haubner stated in part as

16  follows:

17          "The file contains two brief hand-written notes from the claimant's
            treating physician, Dr. R. Tindal.  The first indicates claimant is
18          'totally sedentary' (Exhibit 3F/2); the second states claimant is 'unable
            to be gainfully employed' (Exhibit 5F/1).  However, these notes lack
19          bases for the conclusions regarding limitations, such as signs, test
            results, whether the limitations were based on claimant's objective
20          medical evidence in the record (e.g. claimant's pulmonary function
            tests). . . .  Furthermore, other substantial evidence (discussed in this
21          decision) does not fully support the conclusions in Exhibits 3F/2 and
            5F/1."  (AR 18-19)(emphasis added).

22

23          It is evident from the above that the ALJ cited specific and legitimate reasons for discounting

24  Dr. Jindal's opinions: (1) they were unsupported by any medical tests or any other objective evidence

25  in the record and (2) they were in fact contrary to a pulmonary function test run by another physician,

26  Tomas B. Rios, M.D., in the course of his own consultative examination.  (AR 121-25).  The

27  pulmonary function test run by Dr. Rios established that claimant's underlying obstructive lung

28  disease had a "good response" to "bronchodilator therapy."  (AR 123).  See Morgan v.

1  Commissioner of Social Security Administration, 169 F.3d 595, 603 (9th Cir. 1999)(inconsistency

2  between medical opinion and medical tests is an appropriate basis upon which to discount such

3  opinion).

4          Indeed, and in many respects, the facts presented in the instant case are similar to those in

5  Figueroa v. Apfel, 2000 WL 278073 (S.D.N.Y. 2000).  There, as here, a treating physician's

6  assessment as to the severity of a claimant's asthmatic condition was controverted by the same

7  objective evidence - a pulmonary function test.  There, as here, the treating physician's severity

8  assessment was undermined by the same additional objective evidence, namely, that claimant had

9  never been hospitalized and only rarely visited an emergency room due to her asthmatic condition.

10 In this respect, the following quote from Figueroa is almost word for word applicable here: "The

11 objective evidence in the record does not demonstrate that plaintiff's asthmatic condition is so severe

12 as to preclude her from continuing in her past employment . . . .  For instance, plaintiff has made

13 trips to the emergency room 'a few times' since 1989, but has not received any in-patient

14 hospitalization for treatment of asthma."  Figueroa, supra.  Finally, in Figueroa, as here, a consulting

15 internal medicine physician noted that claimant's asthma responded to bronchodilators.  (AR 123).

16         Accordingly, although Dr. Tindal is claimant's treating physician, his restrictive assessment

17 of her ability to work is not well supported by the substantial evidence of record and is, in fact,

18 contradicted by such evidence, contradictions duly noted by the ALJ himself in his written

19 determination.  The Court therefore finds no error.

20 **2.      Dr. Jindal's Post-Hearing Letter to ALJ Haubner**

21         Claimant asserts that remand is required for the consideration of records requested by ALJ

22 Haubner from Dr. Tindal, but never received by the ALJ.  (Doc. 15, p. 8).  As noted by the ALJ in

23 his written determination:

24                 "I inquired bout [Dr. Jindal's] specialty(ies) and qualifications.  I asked
                   for explanation of specific limitations, onset date whereby the
25                 restrictions became effective, and bases for choosing that date, and if
                   the condition existed less than 12 continuous months, whether it is
26                 expected to do so and at what severity level.  Also, how often and
                   approximate dates the doctor saw claimant, and if part of a treatment
27                 team, the number and approximate dates that the form's signer
                   consulted with other team members regarding claimant. . . . .  However,
28                 nothing was ever submitted."  (AR 18-19).

1    Pursuant to 42 U.S.C. § 405(g), a case may be remanded where new evidence is material and

2 there is good cause for the failure to incorporate such evidence into the record.  As to materiality, the

3 Ninth Circuit held in Booz v. Secretary, 734 F.2d 1378 (9th Cir. 1984), that a reviewing court must

4 first determine whether there is a reasonable possibility that new evidence would have changed the

5 outcome of the Secretary's determination had it been before him.  Id. at 1380.

6    No such possibility exists here.  Except for Dr. Jindal's curriculum vitae (AR 178-79), the

7 additional information submitted by him in response to the ALJ's request simply reiterates his

8 opinion that claimant is disabled (compare AR 170 with AR 141, 149) and offers duplicate copies of

9 medical reports already in the administrative record.  (Compare AR 171-77 with AR 142, 147, 151-

10 55).[3]  The Court therefore finds that remand is neither appropriate nor required.

11 **3.    Claimant's Credibility**

12    Claimant asserts that the ALJ erred in failing to adopt the vocational expert opinion reflective

13 of claimant's claimed subjective limitations (i.e., ability to lift and carry only 10 pounds, ability to

14 stand only 20 to 25 minutes, and a need to lay down three times a day for 30 minutes at a time).

15 (Doc. 15, pp. 8-9).  As claimant states, it is her contention "that her testimony is credible."  (Doc. 15,

16 p. 9).

17    ALJ Haubner rejected claimant's credibility.  (AR 17-18.)  As this credibility assessment

18 informed the ALJ's decision throughout the sequential analysis - and not only during his Step Five

19 hypothetical - the Court must consider the credibility issue, one duly (albeit tersely) raised by

20 claimant, in a broader sense than simply with respect to Step Five.

21    A two step analysis applies at the administrative level when considering a claimant's

22 subjective credibility.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must

23 produce objective medical evidence of an impairment and show that the impairment could

24 reasonably be expected to produce some degree of symptom.  Id. at 1281-82.  If claimant satisfies

25

26    [3] One of these duplicate reports was a Mini-Mental State Examination for which claimant scored borderline
"moderate" for dementia.  (Compare AR 177 with AR 147).  As with claimant's asthmatic condition, this was addressed
27 by the ALJ, who noted that in his written determination that claimant "was able to testify in a responsive manner and did
not have any noticeable problems with memory, thought content or formulating the testimony in a goal-directed manner."
28 (AR 18).

1   this test - and if there is no evidence of malingering - the ALJ can reject the claimant's testimony

2   about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for

3   doing so." Id. at 1281.  Such specificity is crucial so as to enable effective judicial review.  See

4   Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and

5   convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to

6   determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the

7   ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent

8   reviewers the weight the adjudicator gave to the individual's statements and reasons for that

9   weight").

10          Here - upon first synopsizing claimant's visits with various physicians (AR 15-16) - ALJ

11  Haubner discussed and parsed claimant's subjective complaints at great length.  In doing so, he noted

12  numerous specific, clear and convincing reasons - all supported by substantial evidence in the record

13  - for discounting claimant's subjective complaints, and the supposed limitations that went with them.

14  Among other things, ALJ Haubner noted the following:

15          I.      While claimant testified that she has problems wheezing and catching her breath,

16  "this complaint appears to be stable with her regimen of prescribed medication, inhalers, treatments

17  and supplemental oxygen . . . . [And] an examination of the lungs at the time of the consultative

18  internist examination in February 2003 was normal."  (AR 17).

19          ii.     While claimant at first testified that she is fully compliant with all her medications

20  and treatment, "she later admitted she still smokes cigarettes against medical advice."  (AR 17).

21          iii.    While claimant's disability onset date was December 10, 2001, her "dismal work

22  history" before then - no work at all between 1980 and 2000 - suggest that "there are motivational

23  factors associated with her lack of work activity which are not connected to her medical condition or

24  any impairment.  (AR 17).

25          iii.    While claimant claimed to be dysfunctional, her "wide range of activities of daily

26  living" suggested otherwise.  (AR 18).  These activities include "taking care of all her own personal

27  needs, cooking 2 meals a day every other day, doing dishes and laundry, sweeping and vacuuming

28  once a week and straightening the bed daily . . . . [going] outside 3 times a week . . . . [driving] a

1  stick-shift car 4 to 5 times a week, [going] shopping once a week and attend[ing] church once a

2  week."  (AR 18).

3          In light of the foregoing, the Court finds that ALJ Haubner sufficiently articulated a number

4  of inconsistencies justifying his decision to discredit claimant's subjective complaints, and that these

5  inconsistencies were well supported by substantial evidence in the record.  See Light v. Social Sec.

6  Admin., 119 F.3d 789, 792 (9th Cir. 1997)("the ALJ may consider [claimant's] reputation for

7  truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his

8  daily activities, his work record, and testimony from physicians and third parties concerning the

9  nature, severity, and effect of the symptoms of which he complains"); Brawner, 839 F.2d at 433

10  (upon giving "great weight to [the] ALJ's credibility assessment," the court concluded that it was

11  supported by substantial evidence).  As it pertains to the final argument of claimant's brief, the Court

12  finds that ALJ Haubner properly rejected vocational expert testimony based upon a hypothetical that

13  encompassed such discredited subjective complaints.

## CONCLUSION

15          For the reasons outlined above, the Court finds no error in the ALJ's analysis.  As such, the

16  Commissioner's decision to deny disability benefits is supported by substantial evidence in the

17  record as a whole and based on proper legal standards.  Accordingly, this Court DENIES claimant's

18  appeal from the administrative decision of the Commissioner of Social Security.

19          The clerk of this Court is DIRECTED to enter judgment as a matter of law in favor of

20  defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against claimant Shirley Ann

21  Silva.

22

23  IT IS SO ORDERED.

24  Dated:   **April 19, 2006**                              **/s/ Theresa A. Goldner**
    **j6eb3d**                                           UNITED STATES MAGISTRATE JUDGE

25

26

27

28